# United States Tax Court

T.C. Memo. 2023-2

MARIE L. HENRY,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 18832-18.                    Filed January 5, 2023.

————

*Robert D. Probasco* and Madison Walker (student), for petitioner.

*David M. Livermore* and *A. Gary Begun*, for respondent.

## MEMORANDUM FINDINGS OF FACT AND OPINION

ASHFORD, *Judge*: By statutory notice of deficiency dated June 29, 2018, the Internal Revenue Service (IRS or respondent) determined a deficiency in petitioner's federal income tax of $7,205 for the 2016 taxable year. The sole issue for decision is whether petitioner was entitled to a premium tax credit (PTC) and, if she was not, whether she is required to repay Advanced Premium Tax Credit (APTC) payments of the PTC under section 36B.[1] We resolve this issue in favor of respondent.

## FINDINGS OF FACT

Some of the facts have been stipulated or deemed stipulated and are so found. The Stipulation of Facts, the Supplemental Stipulation of

---

[1]Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*2] Facts, the Third Stipulation of Facts, and the attached Exhibits are incorporated herein by this reference.[2]  Petitioner resided in Florida when she timely filed her Petition with the Court.

Since April 2015 petitioner has been unemployed, and during at least 2015 and 2016 she was not only in a terrible financial state but also in a terrible physical and mental state.  Consequently, starting in 2015 and through at least 2016 she made early withdrawals from a retirement or pension plan to cover her living expenses, and during at least 2016 she limited her medical treatment.

Petitioner was, however, enrolled in health insurance coverage provided by Blue Cross Blue Shield of Florida (Florida Blue) for the first 11 months of 2016 through the Health Insurance Marketplace (Marketplace).[3]  Petitioner's monthly premium for her Florida Blue coverage was $708, for a total of $7,788 for the 11 months.

The Marketplace determined that petitioner was eligible for the PTC and the APTC for her coverage.  Accordingly, for the 11 months of coverage under Florida Blue, she received the benefit of monthly APTC payments of $655, for a total of $7,205.  The monthly APTC payments were paid directly to Florida Blue on petitioner's behalf and applied to the cost of her monthly premiums.  Petitioner paid the remaining $53 for some of the monthly premiums via debit from her bank account.

The Marketplace had no record of petitioner's attempting to request termination or cancellation of her coverage during 2016.  Ultimately, on November 30, 2016, her coverage was terminated for nonpayment of premiums.

The Marketplace sent to the IRS and to petitioner a 2016 Form 1095–A, Health Insurance Marketplace Statement, which reflected petitioner's coverage information under Florida Blue from January 1 to December 31, 2016.  This form was enclosed with a letter dated January 16, 2017, from the Marketplace to petitioner at the same address as her

---

[2]The Stipulation of Facts and the Supplemental Stipulation of Facts, along with the Exhibits attached to those stipulations, were admitted into evidence under Rule 91(f).

[3]Petitioner was also enrolled in "sliding scale" insurance through a community health center for 2016, but this insurance was not considered health insurance for purposes of complying with the individual mandate of the Patient Protection and Affordable Care Act (ACA), Pub. L. No. 111-148, 124 Stat. 119 (2010).  See *infra* p. 4 for a brief discussion of the ACA.

**[*3]** address of record in this case. The letter directed her to file a tax return if the form showed she received the benefit of the APTC and complete and attach to the return Form 8962, Premium Tax Credit (PTC), which is used to figure the amount of PTC and reconcile it with the APTC. Later, the Marketplace sent to the IRS and to petitioner a corrected 2016 Form 1095–A, which reflected petitioner's coverage information under Florida Blue from January 1 to November 30, 2016. This form was enclosed with letters dated May 8 and 9, 2017, from the Marketplace to petitioner also at the same address as her address of record in this case. Both letters included the same directives to petitioner as the January 16, 2017, letter.

Petitioner filed (with the assistance of a paid preparer) a Form 1040, U.S. Individual Income Tax Return, for 2016 (2016 return). On the 2016 return petitioner specified her filing status as head of household and claimed one exemption for herself and one dependency exemption for her son. She also reported total income (and adjusted gross income (AGI)) of $91,274, consisting of taxable pensions and annuities of $68,750 and taxable Social Security benefits of $22,524 (but total Social Security benefits of $26,499). Finally, petitioner claimed itemized deductions of $28,751 and reported income tax withholding from the pensions and annuities of $13,750, for a claimed refund of $5,846. Since the Marketplace had made APTC payments on her behalf during 2016, petitioner was required to complete Form 8962 and attach it to the 2016 return; however, she did not do so.

On June 29, 2018, the IRS issued to petitioner a notice of deficiency determining that (1) since she received the benefit of APTC payments totaling $7,205, she was required to include Form 8962 with the 2016 return and (2) on the basis of her modified AGI (MAGI), she was no longer eligible for the PTC and must repay the APTC payments in their entireties.

## OPINION

In general, the Commissioner's determination set forth in a notice of deficiency is presumed correct, and the taxpayer bears the burden of proving otherwise. Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933); *see also Johnson v. Commissioner*, 152 T.C. 121, 123 (2019).[4] Petitioner does not contend that the burden of proof should shift to

---

[4]We also note the corollary that tax deductions and credits are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deduction or credit claimed. *Segel v. Commissioner*, 89 T.C. 816, 842 (1987).

**[\*4]** respondent under section 7491(a), nor has she established that the requirements for shifting the burden of proof have been met. Accordingly, the burden of proof remains on petitioner. *See* § 7491(a)(2).

Congress enacted the ACA to "improve access to and the delivery of health care services for all individuals, particularly low income, underserved, uninsured, minority, health disparity, and rural populations." ACA § 5001, 124 Stat. at 588. To achieve this purpose, the statutory scheme, among other things, (1) mandates that individuals maintain health coverage (or incur a penalty for not maintaining qualifying health coverage), (2) creates health insurance exchanges that are administered by either state governments or the federal government, and (3) provides a refundable credit to offset the cost of health coverage for those who qualify. *Id.* §§ 1311, 1321(c), 1401, 1501, 124 Stat. at 173, 186, 213, 242. As to the credit, ACA § 1401 created section 36B, which allows an "applicable taxpayer" a refundable credit equal to the PTC amount of the taxpayer for the taxable year. § 36B(a), (b), and (c); *see McGuire v. Commissioner*, 149 T.C. 254, 259–60 (2017).

Under section 36B(c)(1)(A), an "applicable taxpayer" is (and thus the PTC is generally available to) someone whose household income for the taxable year equals or exceeds 100% of the Federal Poverty Line (FPL) but does not exceed 400% of the FPL. *See also* Treas. Reg. § 1.36B-2(b)(1). Section 36B defines household income as the sum of the taxpayer's MAGI plus the MAGI of family members for whom the taxpayer properly claims deductions for personal exemptions under section 151 and who were required to file a federal income tax returns under section 1. *See* § 36B(d)(1) and (2)(A); *see also* Treas. Reg. § 1.36B-1(e). Section 36B also defines MAGI as AGI increased by certain items, including Social Security benefits not included in gross income. *See* § 36B(d)(2)(B)(iii); *see also* Treas. Reg. § 1.36B-1(e)(2).

The FPL is defined as the most recently published poverty guidelines (updated periodically in the Federal Register by the Secretary of Health and Human Services under the authority of 42 U.S.C. § 9902(2)) as of the first day of the regular enrollment period for coverage by a qualified health plan offered through an Exchange, such as the Marketplace, for a calendar year. § 36B(d)(3); *Knox v. Commissioner*, T.C. Memo. 2021-126, at \*5–6; Treas. Reg. § 1.36B-1(h). For 2016, the first day of the regular enrollment period was November 1, 2015, *see* 45 C.F.R. § 155.410(e)(2) (2015), and as of that date, the most recently published poverty guidelines were published in the

[*5] Federal Register on January 22, 2015, *see* 80 Fed. Reg. 3236 (Jan. 22, 2015).

If a taxpayer is unable to afford the monthly premiums for his or her health coverage, Treasury may reduce the monthly premium amount by remitting APTC payments directly to the taxpayer's qualified health plan. ACA § 1412(c)(2)(A), 124 Stat. at 232; *see also McGuire*, 149 T.C. at 260. The qualified health plan must then reduce the monthly premium charged to the taxpayer by the amount of the APTC received. ACA § 1412(c)(2)(B), 124 Stat. at 232–33; *see also McGuire*, 149 T.C. at 260–61.

Because a taxpayer's income for a calendar year may ultimately differ from the income estimate used to determine the APTC, after the close of that calendar year the taxpayer must reconcile the APTC payments made on his or her behalf with the eligible credit amount. § 36B(f); *McGuire*, 149 T.C. at 261; Treas. Reg. § 1.36B-4. A taxpayer does this by completing the Form 8962 and including this form with his or her filed tax return. *McGuire*, 149 T.C. at 261. If the total amount of the APTC is more than the amount to which the taxpayer is ultimately entitled, the taxpayer owes the excess credit back to the federal government and it is reflected on the return as an increase in tax. § 36B(f)(2); *McGuire*, 149 T.C. at 261; Treas. Reg. § 1.36B-4(a)(1). Depending on the taxpayer's income vis-a-vis the FPL, there are limits to the amount of the increase in tax. *See* § 36B(f)(2)(B); *McGuire*, 149 T.C. at 261; Treas. Reg. § 1.36B-4(a)(3). For a taxpayer with income greater than 400% of the FPL, there is no limit to the amount of the increase in tax; he or she is not eligible for the PTC and must reflect the total amount of APTC payments made on his or her behalf as a tax liability on his or her return. *See* § 36B(f)(2); *McGuire*, 149 T.C. at 261; Treas. Reg. § 1.36B-4(a)(4) (example 5).

On the 2016 return petitioner reported AGI of $91,274 and Social Security benefits not included in gross income of $3,975 (total Social Security benefits of $26,499 minus taxable Social Security benefits of $22,524). Accordingly, for purposes of section 36B, her MAGI for 2016 was $95,249, and since she reported no income from her son, her household income equaled her MAGI.

Pursuant to the January 22, 2015, poverty guidelines, the FPL for a two-person household in Florida during 2016 was $15,930.

[*6] Petitioner's household income of $95,249 was 598%[5] of the FPL during 2016 for the applicable family size residing in Florida. Thus, because her household income exceeded 400% of the FPL, she was not entitled to the PTC or any APTC in 2016. As respondent determined, petitioner's 2016 tax liability should be increased dollar-for-dollar by the APTC payments totaling $7,205 that the Marketplace made on her behalf to Florida Blue, which results in a deficiency in her income tax of that same amount for 2016.

Petitioner does not dispute that the Marketplace made APTC payments to Florida Blue on her behalf. Rather, she contends that she should not be liable for the $7,205 deficiency because she canceled her health coverage in February 2016 and thus no payments should have been remitted on her behalf. Although she appeared sincere at trial, and we do not doubt that she was in a fragile mental state during 2016, petitioner was unable to offer any documentation to corroborate her contention. Indeed, the documentation from the Marketplace shows otherwise; the documentation stated that there was no record of her attempting to request termination or cancellation of her health coverage during 2016 and on November 30, 2016, her coverage was terminated for nonpayment of premiums. We sustain respondent's determination.[6]

We have considered all the arguments made by the parties and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

*Decision will be entered for respondent.*

---

[5]This percentage is rounded to the nearest whole percentage.

[6]Since petitioner is still unemployed and may be continuing to experience financial hardship, we direct respondent to include alternative payment possibilities regarding petitioner's 2016 tax liability in any subsequent correspondence with her.